**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **BENJAMIN FRANKLIN,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:23-cv-00183-TES** |
| **TWIGGS COUNTY, GEORGIA, and SHERIFF DARREN MITCHUM,** | |
| *Defendants.* | |

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Plaintiff Benjamin Franklin brings this suit arising out of a DUI checkpoint on March 16, 2023. [Doc. 1, ¶¶ 2, 6–7]. Plaintiff—operating a non-emergency medical transport van along Interstate 16—proceeded to exit the highway at exit 27 in Twiggs County, Georgia. [*Id.* at ¶ 4–7]. After exiting, Plaintiff encountered a DUI checkpoint— Operation Wrong Exit. [*Id.* at ¶ 11]. Once Plaintiff entered the checkpoint, a sheriff's office deputy stopped Plaintiff and asked for his driver's license, and Plaintiff complied. [*Id.* at ¶ 6].  Plaintiff did not notice other cars being stopped. [*Id.*]. Plaintiff asked if he was suspected of a crime, and the deputy informed him that he was not suspected of a crime, but instead was at a routine DUI checkpoint. [*Id.* at ¶ 7]. Plaintiff then asked to speak to a supervisor. [*Id.*].

Plaintiff then encountered Sergeant Pippio, "a [p]olice [o]fficer that was representing Twiggs County." [*Id.* at ¶¶ 8-9]. Sergeant Pippio proceeded to yell at Plaintiff, saying "[b]uddy you're barking up the wrong tree. [You] don't have the right to ask any questions." [*Id.*]. Sergeant Pippio continued, saying "[y]ou think you know the law, but you know nothing about the law, you have no rights to ask questions." [*Id.* at ¶ 8]. Plaintiff claims that because of Sergeant Pippio's actions, he "felt as though [his] civil rights were violated," feared for his safety, and was "extremely embarrass[ed]." [*Id.*]. Plaintiff was then presumably permitted to leave the DUI stop without further incident. [Doc. 10-1, p. 3].

After the stop, Plaintiff submitted a request to the Twiggs County Sheriff's Office, under the Georgia Open Records Act, for dash or body camera videos, written reports of the traffic stop, internal policies or procedures regarding traffic checkpoints, and information about the deputies involved in his traffic stop. [Doc. 1, ¶¶ 10, 21]. On March 31, 2023, the Twiggs County Sheriff's Office sent Plaintiff a letter stating that "since there wasn't a citation or arrest made at the point of contact, and only the license and insurance was verified, and you were free to leave . . . no videos [will] be provided." [*Id.* at ¶ 22]. Attached to this letter were various documents about Operation Wrong Exit. [*Id.* at ¶ 23]. On April 27, 2023, Plaintiff received a letter from an attorney for the Sheriff's Office, stating that there were no videos or written records from the traffic stop. [*Id.* at ¶ 24].

2

On May 24, 2023, Plaintiff Benjamin Franklin brought suit against Twiggs County and Sheriff Darren Mitchum. [*Id.* at ¶¶ 2, 13]. In Count I, Plaintiff claims that Mitchum (in both his individual and professional capacities) violated his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and § 1985. [*Id.* at ¶ 11]. In Count II, Plaintiff claims that Mitchum intentionally caused Plaintiff severe emotional distress under the state law tort theory of intentional infliction of emotional distress. [*Id.* at ¶ 12]. In Count III, Plaintiff claims that Twiggs County violated his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and § 1985. [*Id.* at 13].[1] In Count IV, Plaintiff claims that Twiggs County intentionally caused Plaintiff severe emotional distress under the same state law tort theory of intentional infliction of emotional distress. [*Id.* at ¶ 15]. In Count V, Plaintiff claims that Twiggs County violated the Georgia Open Records Act by claiming documents and videos Plaintiff requested do not exist. [*Id.* at ¶ 16].

## LEGAL STANDARD

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d

---

[1] Plaintiff is presumably alleging that Twiggs County was liable for the actions of the officers involved in this DUI checkpoint stop. However, the Court notes that Twiggs County does not, in fact, have a police department. [Doc. 10-1, p. 2]. It does have a Sheriff's Office.

1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but

4

legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

### I.   Section 1985 Claims

To the extent Plaintiff asserts claims under 42 U.S.C. § 1985, those claims fail. To

allege a claim under § 1985(3)[2], a plaintiff must allege: (1) defendants engaged in a

conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a

protected person or class the equal protection of the laws, or equal privileges and

immunities under the laws; (3) a conspirator committed an act to further the conspiracy;

and (4) as a result, the plaintiff suffered injury to either his person or his property, or

was deprived of a right or privilege of a citizen of the United States. *Jimenez v. Wellstar*

*Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010).

Plaintiff's Complaint lacks nearly all of the necessary elements of a viable § 1985

claim. Indeed, Plaintiff only mentions a version of the word "conspiracy" one time—

alleging that Defendant Mitchum "conspired with officials at Twiggs County[] to cover

up his wrongdoing, including preventing the Plaintiff from receiving requested Open

Records [*sic*]." [Doc. 1, ¶ 7]. That bare-bones assertion is not enough to state a claim

under § 1985. *Cf. Barnes v. Zaccari*, 592 F. App'x 859, 868 (11th Cir. 2015) ("[S]imply

alleging a conspiracy is not enough to sufficiently plead a claim of conspiracy.");

*Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("In conspiracy cases, a defendant

---

[2] Although Plaintiff's Complaint does not clearly outline which subsection of § 1985 Plaintiff asserts his claims under, the Court notes that only § 1985(3) is remotely applicable to the facts of this case.

must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed."). Therefore, the Court **DISMISSES** Plaintiff's § 1985 claims. *See Fullman*, 739 F.2d at 557 ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

## II.    <u>Section 1983 Claims</u>

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for relief under § 1983, a plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, he must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.*

Put simply, a "§ 1983 claim is predicated on an alleged violation of an underlying constitutional right." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). "Absent the existence of an underlying constitutional right, no [§ 1983] claim will lie." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). Indeed, "there can be no supervisory or municipal liability absent an

underlying constitutional violation." *James v. City of Huntsville*, No. 5:14-CV-02267-SGC, 2015 WL 9268159, at *2 (N.D. Ala. Dec. 21, 2015) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993)). Therefore, the Court begins with analyzing the rights Plaintiff alleges Defendants violated.

In this case, Plaintiff's § 1983 claims arise out of Sergeant Pippio yelling at him during the routine DUI traffic stop. Sergeant Pippio's actions, distressing though they may have been to Plaintiff, are not sufficient to establish a violation of Plaintiff's federal rights because "[v]erbal taunts alone, even when distressing, are not generally sufficient to state an actionable § 1983 claim." *Herbert v. Ward*, 5:22-CV-00081-MTT-MSH, 2022 WL 2955149, at *11 (M.D. Ga. July 26, 2022); *see also Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008); *Abella v. Simon*, 831 F. Supp. 2d 1316, 1341 (S.D. Fla. 2011) ("A police officer's use of derogatory language does not violate the Constitution."), *vacated in part on other grounds*, 482 F. App'x 522 (11th Cir. 2012). Indeed, "[m]ere threatening language does *not* amount to a constitutional violation, giving rise to liability for an action pursuant to § 1983." *Widner v. Aguilar*, 389 F. App'x 976, 979 (5th Cir. 2010); *see also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) (holding that "verbal threats and harassment" are not generally actionable under § 1983).

8

Plaintiff also complains that Defendant Mitchum violated his rights by not following the Georgia Open Records Act—a state law. However, a § 1983 claim must be based on a violation of a federal right, not a state law. *See Ensley v. Soper*, 142 F.3d 1402, 1407 n.4 (11th Cir. 1998). Even more, courts have clearly held that violations of state open-records laws cannot be the basis for a § 1983 claim. *Viera v. City of Lake Worth, Fla.*, 853 F. App'x 356, 360 (11th Cir. 2021); *Crossdale v. Swain*, No. 2:21-CV-816-JES-MRM, 2022 WL 281106, at *3 (M.D. Fla. Jan. 31, 2022).

Without sufficiently establishing that these Defendants deprived Plaintiff of a right, privilege, or immunity secured by the U.S. Constitution, Plaintiff has not satisfied the first element of any theory of a § 1983 claim, and his federal claims necessarily fail at the outset.

## A.   <u>Defendant Twiggs County</u>

Assuming Plaintiff's Complaint does adequately plead a constitutional violation, his § 1983 claims still fail. First, Plaintiff brings § 1983 claims against Twiggs County as an attempt to hold the county liable for the actions of the Twiggs County Sheriff's Office deputies and law enforcement officers employed by other cities and counties in the middle Georgia area. [Doc. 1, pp. 13-15].

Counties can only be held liable for acts of which "the county is actually responsible." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). To create that liability, Plaintiff must allege an "official policy" under which the county

caused a constitutional violation. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). That policy can be enumerated in two ways: (1) an officially promulgated policy, or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the county. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff asserts that Twiggs County's "informal custom promulgated over the years" led to a constitutional violation at the DUI stop. [Doc. 1, ¶ 6]. Plaintiff cites authority to say that "[t]he continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983." [Doc. 1, ¶ 7 (quoting *Depew v. City of St. Mary, Ga.*, 787 F.2d 1496 (11th Cir. 1986))]. However, that case is inapposite because, as explained below, under Georgia law, a county sheriff's office is wholly different from a police department.

It is clear that Georgia law regards a sheriff's office as a separate entity, not one under a county's control. *See Manders v. Lee*, 338 F.3d 1304, 1310 (11th Cir. 2003). Indeed, Georgia law gives only the Georgia General Assembly—not counties—the power to control sheriffs. *See Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 396 S.E.2d 903 (Ga. 1990). As a corollary, sheriff's deputies are employees of the sheriff, not the county. *See Brown v. Jackson*, 470 S.E.2d 786 (Ga. Ct. App. 1996). A sheriff is not considered a policymaker for the county regarding the sheriff's law enforcement policies and conduct. *See Grech v. Clayton Cnty.*, 335 F.3d 1326 (11th Cir. 2003). Therefore, Plaintiff cannot create the

necessary causal link between Defendant Twiggs County, Georgia, and his alleged harm to sustain a § 1983 claim using *Monell* liability.

Furthermore, Twiggs County also cannot be liable for the actions of Sergeant Pippio, a Warner Robins law enforcement officer. [Doc. 11, ¶ 4]; *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1291 (11th Cir. 1998) (holding that a county cannot be liable for the acts of individuals over which it has no control). Plaintiff failed to allege any facts that would show that Twiggs County had any control over Sergeant Pippio. Therefore, because Twiggs County cannot be liable for the actions of the Sheriff's Office employees, or employees of other counties, Plaintiff's federal claims (Count III) against Twiggs County are **DISMISSED**.

### B.   Defendant Mitchum

#### 1.   Official Capacity Claims

Defendant Mitchum first argues he is entitled to Eleventh Amendment immunity as to Plaintiff's claims against him in his official capacity. [Doc. 10-1, pp. 3–4]. To be sure, the Eleventh Amendment to the United States Constitution bars suit in federal court against an "arm of the state," except where such immunity is waived by the state or abrogated by Congress. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003); *Stevens v. Gay*, 864 F.2d 113, 114 (11th Cir. 1989) ("[The] Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity.").

Under Georgia law, sheriffs are recognized as "arms of the state." *Powell v. Barrett*, 496 F.3d 1288, 1304 (11th Cir. 2007); *Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009); *Wilkes v. Habersham Cnty. Comm'rs*, No. 2:10-CV-68-RWS, 2011 WL 1557913, at *2 (N.D. Ga. Apr. 25, 2011) (holding that "sheriffs are 'arms of the state' and, as such, are entitled to Eleventh Amendment immunity"). Therefore, in Georgia, sheriffs are protected from suit in federal court unless the state waived its immunity, or Congress abrogated it.

Georgia has not waived its immunity for this type of claim. *See Rooks v. Altamaha Tech. Coll.*, No. CV206-72, 2007 WL 2331830, at *2 (S.D. Ga. Aug. 13, 2007) (discussing O.C.G.A. § 50-21-23(b) which describes the limited circumstances where Georgia has waived its immunity). Instead, Georgia law expressly reserves the state's Eleventh Amendment immunity "with respect to actions brought in the courts of the United States." O.C.G.A. § 50-21-23(b); *see also Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 767 (11th Cir. 2011) (affirming a district court's dismissal of a § 1983 claim against an arm of the state based on Eleventh Amendment immunity). Absent a state's consent or waiver, Congress may explicitly abrogate Eleventh Amendment immunity—however, Congress must state that intention clearly and the act must be pursuant to a valid grant of Congressional authority. *See Bd. Tr. Univ. Alabama v. Garrett*, 531 U.S. 356 (2001). In the § 1983 context, Congress has not abrogated Georgia's Eleventh Amendment immunity. *Stephens v. Ga. Dep't Transp.*, 134 F. App'x 320, 324 (11th Cir. 2005)

("Congress has not abrogated immunity for claims brought pursuant to § 1983, the ADEA, or the ADA."). Therefore, "because Georgia has not voluntarily waived its immunity in § 1983 cases and Congress has not abrogated it," Defendant Mitchum "is entitled to Eleventh Amendment immunity on Plaintiff's § 1983 official capacity claim" against him. *Doe v. Ga. Dep't of Juv. Just.*, No. 4:18-CV-165 (CDL), 2019 WL 4675375, at *3 (M.D. Ga. Sept. 25, 2019).

Accordingly, Plaintiff's claims against Mitchum in his official capacity are **DISMISSED**.

## 2.      Individual Capacity Claims

Aside from Plaintiff's claims against Mitchum in his official capacity, Plaintiff also sues Mitchum individually. But, as Mitchum correctly points out, "[t]here are no allegations that Sheriff Mitchum ever personally interacted with Plaintiff, gave any personal direction to anyone at the checkpoint regarding Plaintiff, or was even present at the checkpoint." [Doc. 10-1, p. 8]. Therefore, without specifically outlining that Mitchum personally participated in the alleged violation, Plaintiff can only assert a claim under a supervisor liability or a *Monell* theory.[3]

To be liable as a supervisor under § 1983, an individual must (1) personally participate in the unconstitutional conduct, or (2) have some causal connection between

---

[3] Mitchum cannot be held liable under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978).

their acts and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). For that causal connection, a plaintiff must show that (1) the supervisor was on notice, by history of widespread abuse, of the need to correct a practice and failed to do so, (2) a policy or custom resulted in deliberate indifference, (3) the supervisor directed a subordinate to act unconstitutionally, or (4) the supervisor knew of a subordinate's unlawful conduct and failed to stop it. *Id.*

Under a *Monell* theory, Plaintiff must show that Mitchum established an "official policy" that caused his constitutional violation or point to an "unofficial custom or practice" that is the "moving force behind the constitutional violation." *Martin v. City of Macon, Ga.*, 702 F. App'x 941, 943 (11th Cir. 2017) (citations omitted).

Here, Plaintiff failed to outline **any** causal connection between Mitchum and his alleged constitutional violations. While Plaintiff uses buzz words like "rules promulgated by the Sheriff's Department," "final decision maker," and others pulled from § 1983 cases, Plaintiff failed to add any meat to those bones. [Doc. 1, p. 11]. Those bare assertions, "even when accompanied by certain buzz words, [are] simply not sufficient[.]" *Berger v. Young*, No. 3:21CV239-MCR-HTC, 2021 WL 4126296, at *9 (N.D. Fla. July 30, 2021), *report and recommendation adopted*, No. 3:21CV239-MCR-HTC, 2021 WL 4126902 (N.D. Fla. Sept. 9, 2021).

Moreover, if there was an "informal custom" for Sheriff's deputies in Twiggs County to not record their duties, Plaintiff's allegations still would not show a

14

"continued failure" to "prevent known constitutional violations." The alleged conduct would be nothing more than a policy violation, which is insufficient to establish a constitutional violation under § 1983. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009) (holding that a city was not liable for a misapplication of training or an officer's failure to follow clear policies); *Rivas v. Freeman*, 940 F.2d 1491, 1496 (11th Cir. 1991) ("Unlike the indifference to the providing of policies, procedures, and training on the Sheriff's part, the conduct of the deputies indicate[s] a lack of directions, or at most simple negligence."); *Hartfield v. City of Urbana,* No. 21-2045, 2021 WL 3036378, at *2 (C.D. Ill. July 19, 2021) ("The Court notes even if the Defendants had intentionally violated the county's body camera policy, the violation does not state a violation of Plaintiff's constitutional rights"); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of . . . departmental regulations and police practices."); *Townsend v. Neal*, No. 3:21-cv-106-RLM-MGG, 2021 WL 2721372, at *1 (N.D. Ind. June 30, 2021)("[A] policy violation does not amount to a constitutional violation.").

### 3.   <u>Qualified Immunity</u>

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). Discretionary functions include those "(1) undertaken pursuant to the performance of [an officer's] duties and (2) within the scope of [the officer's] authority." *Lenz v. Wilburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). The "clearly established" requirement may be met by one of three showings: (1) a materially similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012).

If Plaintiff's § 1983 claim against Mitchum had not failed on the merits, Mitchum has raised the defense of qualified immunity. Mitchum has sufficiently demonstrated that he was performing a discretionary function. The Supreme Court has upheld the constitutionality of suspicionless DUI checkpoints. *United States v. Regan*, 218 F. App'x

16

902, 904 (11th Cir. 2007); *see also Michigan Dep't of State Police v. Sitz*, 496 U.S. at 445

(1990). Therefore, DUI checkpoints are within the scope of an officer's (and particularly

the Sheriff's) authority, making them discretionary. *See Townsend v. Coffee Cnty., Ga.*, 854

F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) ("Investigatory stops and arrests fall squarely

within the traditional law-enforcement responsibilities of a sheriff and his deputies.").

Plaintiff has attempted to meet his burden that qualified immunity should not

apply by showing that Mitchum violated a clearly established constitutional right.

However, as discussed above, the actions of Sergeant Pippio, though embarrassing, do

not rise to the level of a constitutional violation, much less a violation of a clearly

established right. Because Plaintiff failed to carry his burden, Mitchum is entitled to

qualified immunity.

Based on the foregoing, because Plaintiff failed to allege sufficient facts

contributing the alleged constitutional violation to Mitchum, Plaintiff's § 1983 claims

against Mitchum are **DISMISSED**.

### III.     State Law Claims

The only remaining claims, then, are Plaintiff's state-law claims. However, the

Court is not required to hear them. Indeed, federal courts may exercise supplemental

jurisdiction over state law claims "in any civil action of which the district courts have

original jurisdiction." 28 U.S.C. § 1367(a). "District courts may decline to exercise

supplemental jurisdiction over a claim" if "the district court has dismissed all claims

over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[S]tate courts, not federal courts, should be the final arbiters of state law," and when a federal court "has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. Sch. Bd. Of Miami-Dade Cnty.*, 167 F.App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). "[D]istrict courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Accordingly, the Court declines to exercise supplementary jurisdiction over Plaintiff's remaining state law claims against these Defendants in accordance with the considerable discretion afforded the Court by 28 U.S.C. § 1367(c)(3). Consequently, all of the state law claims (Counts II, IV, and V) against these Defendants are **DISMISSED without prejudice**. The Court reminds Plaintiff that should he wish to pursue these state law claims, he may do so in the appropriate forum in the State of Georgia.

<u>CONCLUSION</u>

In sum, Plaintiff failed to allege a violation of a federally-protected right—that is fatal to his § 1983 claims. Even if the Court got it wrong, and he did allege a violation of his federal rights, his Complaint still fails to sufficiently allege why these Defendants should be liable for those alleged violations. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss [Doc. 10] and **DISMISSES** Plaintiff's federal claims

18

(Counts I and III). Because there are no more federal claims in this case, the Court declines to exercise its supplemental jurisdiction and **DISMISSES** Plaintiff's Complaint [Doc. 1] **without prejudice**, reminding Plaintiff that he may refile his state-law claims as outlined above.

      **SO ORDERED**, this 17th day of July, 2023.

<div style="margin-left: 40%;">

S/ Tilman E. Self, III
_____
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

</div>